# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

DAVID R. NEAL,              )
                            )
Petitioner,                 )
                            )
vs.                         )    CAUSE NO. 3:12-CV-301
                            )
SUPERINTENDENT,             )
                            )
Respondent.                 )

## OPINION AND ORDER

This matter is before the Court on the Amended Petition for Writ of Habeas Corpus, filed by David R. Neal, a *pro se* prisoner challenging a prison disciplinary proceeding, on November 28, 2012 (DE #24). For the reasons set forth below, the petition (DE #24) is **DENIED**.

BACKGROUND

In MCF #12-04-065, Neal was found guilty of disorderly conduct. (DE #41-3 at 1.) The charge was initiated on April 9, 2012, when Sergeant C. Shaffer wrote a conduct report stating as follows:

> On the above date and time I Sgt. C. Shaffer was posted on phase 2 yard when I was called via radio to signal 8 KHU ½ side. When I arrived I found Offender Neal, David 110281 sitting in the dayroom at a table refusing to go into his cell KHU 122. I tried to explain to Mr. Neal that he needed to go into his cell during count so Sgt. Evans could look into his bottom bunk pass. After explaining several times Neal still refused. After several verbal attempts to order Neal into his cell he

> still would not cooperate so Sgt. Evans and myself
> attempted to escort Offender Neal[.] [H]e then sat on
> the floor and refused to move. At this point I put him in
> a wheel chair and took him to SCU.

(DE #41-1.) Sergeant J. Evans also submitted the following witness statement:

> On 4-9-12 at approximately 15:02 p.m. I Sgt. J. Evans
> called yard Sgt. C. Shaffer to K ½ side to assist in
> locking down offender Neal, David 110281 of K-122. I
> instructed Offender Neal to lockdown and he refused
> saying, "I'm not going in that cell. I have a bottom
> bunk, bottom range pass." I checked and found that
> Offender Neal did not have a bottom bunk or bottom range
> pass. When we attempted to secure offender Neal in the
> cell he put himself on the floor and refused to get up.

(DE #41-3 at 2.)

On April 11, 2012, Neal was formally notified of the charge and given a copy of the conduct report. (DE #41-1, DE #41-2.) He pled not guilty and requested a lay advocate. (DE 41-2.) He requested a review of the surveillance video as physical evidence, and requested a witness statement from a prison physician, Dr. Marandet (first name unknown), to attest that he had a bottom bunk pass. (*Id.*)

Thereafter, a statement was obtained from a prison nurse, who looked through Neal's medical chart and stated that he did not have a current bottom bunk pass recommendation. (DE #41-3 at 3.) The hearing officer also reviewed the surveillance video per Neal's request, and summarized it as follows:

> On the date of 4/9/2012 offender Neal comes into the unit
> with his property on a red cart. The property is
> unloaded at the dayroom table near cell 117/118 and

>     offender Neal sits down at the table.  At 15:02 Yard Sgt.
>     Shaffer comes onto the range and begins to talk with this
>     offender.  15:07 Sgt. Evans begins placing the offenders
>     property into his cell.  At this time, Sgt. Shaffer
>     begins to assist offender Neal up from the stool and
>     offender Neal kicks his right leg out and slides down
>     onto the floor.  Sgt. Shaffer tried to get the offender
>     off the floor but the offender would not bring his legs
>     up making all of his weight dead weight and not easily
>     picked up.   At 15:14 the offender is placed in a
>     wheelchair by Sgt. Shaffer and C/O Huffman. Everyone is
>     off unit at 15:15.

(DE #41-3 at 5.)

On April 17, 2012, a hearing was held on the charge. (DE #41-3 at 1.) Neal made the following statement, "I didn't do that. I slipped and fell. I couldn't get up." (*Id.*) Based on the evidence, the hearing officer found him guilty, resulting in the loss of earned-time credits and other sanctions. (*Id.*) Neal's administrative appeals were denied. (DE #41-3 at 5.)

DISCUSSION

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974).  To satisfy due process,

3

there must also be "some evidence" in the record to support the hearing officer's determination. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Neal's petition is not a model of clarity, but it can be discerned that his first claim challenges the sufficiency of the evidence. (DE #24 at 1.) In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The court will overturn a guilty finding only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

Here, Neal was found guilty of disorderly conduct, which is defined by the Indiana Department of Correction ("IDOC") Adult Disciplinary Procedures ("ADP"), as "exhibiting disruptive and/or violent conduct which disrupts the security of the facility or other area in which the offender is located." (DE #44 at 6.) There

is sufficient evidence in the record to support the hearing officer's determination that Neal was guilty of this offense. Sergeant Shaffer and Sergeant Evans both offered eyewitness accounts that Neal refused to go to his cell during count time and disobeyed multiple direct orders. (DE #41-1 at 1; DE #41-3 at 2.) The summary of the video also indicates that Neal was uncooperative during this incident. (DE #41-3 at 5.) Based on the record, the hearing officer's finding of guilt has adequate evidentiary support. *See Hill*, 472 U.S. at 457 ("Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report alone provided some evidence to support disciplinary determination).

Neal appears to argue that he fell and did not intentionally refuse to get off the floor during this incident. (DE #44.) He asks this Court to review the video evidence for itself, and to subpoena witnesses and hear testimony from all the individuals involved, including Sergeant Evans, Sergeant Shaffer, the disciplinary hearing officer, and Dr. Marandet. (DE ##44, 45.) He misunderstands the nature of this proceeding. Weighing the

5

evidence and assessing the credibility of witnesses was the job of the hearing officer, not this Court.  *McPherson*, 188 F.3d at 786. As stated above, the question for this court is solely whether there is "some evidence" in the existing record to support the finding of guilt.  *See Hill*, 472 U.S. at 457.

   Furthermore, even if Neal did not intentionally refuse to get off the floor as he claims, there is sufficient evidence in the record that he was disorderly and caused a disturbance in the facility.[1]  Neal readily admits that he refused the officers' orders to go to his cell; in his view, "I do not have to go in to a cell I do not want to. . . ." (DE #44 at 3.)  This is incorrect. "[I]nmates cannot be permitted to decide which orders they will obey, and when they will obey them[.]"  *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009).  "When an inmate refuses to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials [which] . . . places the staff and other inmates in danger."  *Id.*  In other words, Neal was not entitled to disobey multiple direct orders simply because he felt he should receive a different bed assignment.  His actions necessitated the intervention of two correctional sergeants, who were pulled from their posts to assist in removing him from the

---

[1] Neal also appears to believe it would have been more appropriate to charge him with "refusing a bed move." (DE #44 at 3.) Whether prison officials might have charged him with some other offense is not the issue; the question for this court is solely whether there is "some evidence" to support the charge on which he was found guilty. *See Hill*, 472 U.S. at 457.

6

dayroom, so that they could conduct a count of the inmates. There is sufficient evidence that Neal acted disorderly, and accordingly, this claim is denied.

Neal's remaining claim is that he was denied exculpatory evidence. (DE #24 at 2.) A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" evidence in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless unless the prisoner establishes prejudice by showing that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

Here, the record shows that Neal requested a statement from a prison physician that he had a bottom bunk pass. (DE #41-2.) A statement was obtained from another member of the medical staff,

who looked through Neal's chart and determined that he did not have a current bottom bunk pass issued by Dr. Marandet or any other physician.[2] (DE #41-3 at 3.) It appears that Neal was dissatisfied with this statement and wanted one from Dr. Marandet instead. (DE #24 at 2.) However, to the extent there was any error, Neal has not demonstrated prejudice. There is nothing to suggest Dr. Marandet would have provided any different information than the nurse, but more importantly, whether Neal had a bottom bunk was wholly irrelevant to the charge. As stated above, Neal was not entitled to disobey the orders of correctional officers and cause a disturbance even if he believed he should have been assigned to a different bunk. Accordingly, he has not demonstrated an entitlement to habeas relief.

CONCLUSION

For the reasons set forth above, the petition (DE #24) is **DENIED**.

**DATED: January 29, 2014**  /s/ RUDY LOZANO, Judge
**United States District Court**

---

[2] There was a document in Neal's chart, which the nurse provided to the hearing officer, indicating that Dr. Marandet had recommended Neal for "medical idle" status in 2004. (DE #41-3 at 4.) This means, in essence, that Neal was excused from working a prison job. *See Williams v. Faulkner*, 837 F.2d 304 (7th Cir. 1988). This is not the same as having a bottom bunk pass, nor does this evidence somehow exculpate Neal from the charge of disorderly conduct on the date in question.

8